# IN THE COURT OF APPEALS OF IOWA

No. 21-0536
Filed September 22, 2021


**IN THE INTEREST OF I.D., C.D., and J.D.,**
**Minor Children,**

**T.D., Mother,**
    Appellant.

_____


Appeal from the Iowa District Court for Cerro Gordo County, Adam D. Sauer, District Associate Judge.


A mother appeals the termination of her parental rights.  **AFFIRMED.**


Jane M. Wright, Forest City, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Barbara J. Westphal, Belmond, attorney and guardian ad litem for minor children.


Considered by Bower, C.J., Mullins, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**BLANE, Senior Judge.**

A mother appeals the termination of her parental rights to her three children. She contends the State did not prove the grounds for termination and it was not in the children's best interests to terminate. Because we find sufficient proof of the grounds for termination and determine it was in the children's best interests, we affirm termination of the mother's rights.

## I. FACTS AND PRIOR PROCEEDINGS.

This is not the first time the family came to the attention of the department of human services (DHS). In 2017 to 2018, DHS provided the parents substance-abuse and domestic-violence related services for about nine months. DHS became aware of the mother and father's history of drug use, domestic violence, and homelessness. That case ended, and the children were returned home. But in September 2019, the children were removed again amid new information that the mother was using methamphetamine while they were in her care. DHS conducted drug tests, and the mother and all three children tested positive for methamphetamine.

For the next two years, the parents struggled to engage with services and show they could safely parent the children.[1] In February 2020, the mother was diagnosed with "cannabis use disorder, severe . . . and amphetamine-type substance use disorder, severe." She met the criteria for intensive outpatient treatment. The mother tried but failed to complete two different inpatient

---

[1] During the case, the mother and father separated. The mother began a new relationship with a paramour.

substance-abuse treatment programs.[2] The mother claims she last used methamphetamine on April 5, 2020, and last relapsed and used marijuana in November 2020. She refused to submit to drug tests requested by DHS to prove her abstinence. Despite mental-health issues that also needed to be addressed, the mother did not engage in mental-health treatment until late in the case and had only attended a few sessions before the termination hearing.

Both parents were inconsistent in attending visitation and never progressed beyond fully supervised visits. Although visitations generally went well when the parents attended, the children suffered an increase in trauma-related behaviors afterward, particularly related to the mother's new paramour. The parents had to be reminded to refrain from talking about inappropriate subjects around the children. At times the children did not want to attend visits or wanted to end visits early.

The mother also struggled with housing and employment instability. At the termination hearing, she had a two-bedroom apartment and, although visits with the children occurred there, it was too small for the children to live in. In the fall of 2020, she worked at Dollar Tree for little more than one month. Later, at the time of the termination hearing in February 2021, she had been working part time at Culver's for two weeks. In September 2020, the court gave the parents a six-month extension to work toward reunification, but those efforts resulted in little progress. The State filed a termination petition in December 2020. After a hearing

---

[2] The mother attended in-patient treatment at YWCA in Fort Dodge in November 2019, but left after about one week, and another in-patient treatment in March 2020, but again left after a few days, not completing either.

in February 2021, the juvenile court ordered termination of the mother's parental rights under Iowa Code section 232.116(1)(e) and (f) (2020). The mother appeals.[3]

## II.  SCOPE AND STANDARD OF REVIEW.

We review termination orders de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We are not bound by the juvenile court's factual findings, but we accord them deference, especially on credibility determinations. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).

## III.  ANALYSIS.

### A.  Statutory grounds

The mother first contends the State did not prove the statutory grounds for termination. The State must prove the allegations in its petition by clear and convincing evidence. *Id.* That burden is satisfied "when there are no 'serious or substantial doubts as to the correctness or conclusions of law drawn from the evidence.'" *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (quoting *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000)). When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the order on any ground we find supported by the record. *Id.* at 707.

We focus on paragraph (f). Termination under paragraph (f) requires clear and convincing evidence:

> 1. The child is four years of age or older.
> 2. The child has been adjudicated a child in need of assistance pursuant to section 232.96.

---

[3] The court also terminated the father's parental rights under section 232.116(1)(e) and (f), but he does not join in this appeal.

3. The child has been removed from the physical custody of the child's parent for at least twelve of the last eighteen months or for the last twelve consecutive months and any trial period at home has been less than thirty days.

4. There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f); *see In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (defining "at the present time" to mean at the time of the termination hearing).

The mother challenges proof as to subparagraph 4, and argues there is no nexus between her substance abuse and adjudicatory harm to the children that would prevent return of the children to her.[4] We agree with the State that the presence of methamphetamine in the children is an adjudicatory harm caused by the mother's substance abuse. *See* Iowa Code § 232.2(6)(o). In addition, our courts have recognized "that an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children." *In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012). The mother relies on *In re M.S.*, 889 N.W.2d 675, 679 (Iowa Ct. App. 2016). But in that case, we found that the State presented no evidence to support the termination ground the parent had a severe substance-abuse disorder. Here, the mother was diagnosed with both severe amphetamine and marijuana use disorder. She also relies on the supreme court decision in *In re J.S.*, 846 N.W.2d 36, 42 (Iowa 2014), that general statements of a mother's methamphetamine abuse by itself do not prove that "a child is imminently likely to suffer physical harm under section 232.2(6)(b)." The court referencing *In re A.B.*, stated: "Hence, a juvenile court could reasonably determine that a parent's active addiction to

---

[4] The mother does not challenge that the evidence supports the first three elements.

methamphetamine is 'imminently likely' to result in harmful effects to the physical, mental, or social wellbeing of the children in the parent's care." *J.S.*, 846 N.W.2d at 42. When the mother's addiction to methamphetamine led to her children testing positive for methamphetamine, such evidence established a nexus between her abuse and an adjudicatory harm. As we have recently held: "The father's continued use of methamphetamine and his failure to engage in substance-abuse treatment means [the child] cannot be safely returned to his care." *In re O.P.*, No. 20-0995, 2020 WL 5946390, at *2 (Iowa Ct. App. Oct. 7, 2020). We reach the same conclusion here.

But this is not the only reason the children are not safe in the mother's care—she has not engaged consistently in ordered mental-health services. What's more, given her history of choosing unsafe romantic partners and allowing the children to witness domestic violence, they would remain unsafe with her. We conclude the risk of adjudicatory harm to the children remains such that they cannot be safely returned to her custody at the present time.

## B. Best interests

Next, the mother contends it was not in the children's best interests to terminate her rights. In making the best-interests determination, we give primary consideration to the child's safety, the best placement for furthering their long-term nurturing and growth, as well as their physical, mental, and emotional condition and needs. Iowa Code § 232.116(2); *see In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). Safety and the need for a permanent home mark the "defining elements" in a child's best interests. *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially).

The mother asserts there is no evidence her substance abuse affected her ability to care of the children. As discussed above, children are not safe when they are exposed to drugs through their parent's use. So we agree with the juvenile court that the children's short and long-term best interests are served by severing their legal ties with the mother. Her unresolved substance-abuse problems make her an unsafe placement for the children, as shown by her lack of progress in visitation, substance-abuse treatment, mental-health treatment, and other services.[5] The children are, however, doing well in their foster home. Their long-term best interests will be met by terminating the mother's parental rights and allowing them to be adopted into a permanent home.

**AFFIRMED.**

---

[5] The mother also argues there was no testimony or written statement from the foster family that the children had been integrated into the family, identified with the family, or preferred the foster family. Nothing in the court's order shows it considered or weighed these factors in its best-interests determination. And we cannot review a finding the juvenile court did not make. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).